## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Clara Louderback and**
**George Louderback,**

        **Plaintiffs,**

v.                                  **Case No. 06-2023-JWL**

**Litton Industries, Inc.;**
**Northrop Grumman Information**
**Technologies, Inc.; Gerber Life Insurance**
**Company; and A.C. Newman and Company**
**Insurance Correspondents, Inc.,**

        **Defendants.**

## MEMORANDUM AND ORDER

Plaintiffs Clara and George Louderback are the parents of Allie Louderback, a woman who died from an infection secondary to surgical treatment for a pre-existing health condition; Clara Louderback is also the named beneficiary in her daughter's group accident insurance policy. After Gerber Life Insurance Company denied Clara Louderback's claim for benefits, plaintiffs filed this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., to recover accidental death benefits and to recover statutory penalties for violations of ERISA's document disclosure requirements. This matter is presently before the court on the parties' cross-motions for summary judgment. As will be explained, defendants' motions for summary judgment are granted in their entirety and plaintiffs' motion for summary judgment is denied.[1]

---

[1] Defendants Litton and Northrop's motion to strike or exclude plaintiffs' untimely filed and/or non-compliant summary judgment exhibits (doc. 62) is also pending before the

## I.    Factual Background

Plaintiffs seek accidental death benefits resulting from the death of their daughter, Allie Louderback, who was an employee participant of the Group Accident Plan for employees of PRC Division of Litton Industries, Inc. (the "Plan").[2]  In December 2002, Allie Louderback elected $300,000 in optional coverage under the Plan, which supplemented the employer-provided basic coverage under the Plan.  Allie Louderback died on January 22, 2003 from peritonitis following surgical treatment for gastroesophageal reflux disease, a pre-existing health condition.  At the time of Allie Louderback's death, the Plan was insured by defendant Gerber Life Insurance Company pursuant to Group Accident Policies ADD-2017 and PAI-2025 (the "Policies").  The Policies were issued to defendant Litton as the group policyholder in August 2003 and bear an "effective date" of January 1, 2003.  Defendant Litton sponsored, maintained and acted as Plan Administrator for the Plan.

The Policies provide benefits for "loss due to Injury caused by an accident."  The term "injury" is defined in the Policies to mean "Accidental bodily injury which: (i) is direct and independent of any other cause; and (ii) requires treatment by a licensed physician or surgeon, acting within the scope of his or her license."  The Policies specifically provide that benefits will not be paid for any loss caused by or resulting from ". . . (b) bacterial infections, except those

court.  The court denies the motion because defendants are entitled to summary judgment in their favor even considering the exhibits submitted by plaintiffs.

[2]Defendant Northrop Grumman Information Technologies, Inc. acquired defendant Litton in 2001.

which occur with a cut or wound at the time of the accident; (c) any kind of disease; (d) medical

or surgical treatment (except surgical treatment required by the accident);. . . "

In March 2003, plaintiffs submitted a claim for benefits.  In September 2003, defendant

A.C. Newman and Company Insurance Correspondents, Inc., acting on behalf of defendant

Gerber, denied the claim on the grounds that the loss was specifically excluded from coverage

as Allie Louderback had died from an infection secondary to surgical treatment.  Defendant

Gerber upheld its decision on appeal.  After the appeal process, plaintiffs contacted defendant

Gerber to highlight that the Policies bore an issue date of August 2003, eight months after Allie

Louderback's death, and to argue that the Policies were therefore not in effect in January 2003.

At that time, plaintiffs began requesting from defendants copies of the "actual" policies that were

in effect at the time of Allie Louderback's death.  Defendant Gerber, at plaintiffs' request,

reconsidered the claim on appeal and determined that the only policies issued by it regarding

Allie Louderback were ADD-2017 and PAI-2025, that those Policies were in effect at the time

of Allie Louderback's death and that the loss was expressly excluded from coverage under the

Policies.


## II.      Relevant Standard and Scope of Review

As a threshold matter, the parties vigorously dispute the appropriate standard of review

the court must utilize with respect to the underlying decision to deny benefits to plaintiffs.  It is

well settled that a "denial of benefits covered by ERISA 'is to be reviewed under a de novo

standard unless the benefit plan gives the administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the terms of the plan.'" *Flinders v. Workforce Stabilization Plan*, ___ F.3d ___, 2007 WL 1894825, at *6 (10th Cir. July 3, 2007) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  If the benefit plan gives discretion to a plan administrator or fiduciary, then a decision denying benefits is typically reviewed under an arbitrary and capricious standard.  *See id.*  If, however, the plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, then the arbitrary and capricious standard still applies but the amount of deference present decreases on a "sliding scale" in proportion to the seriousness of the conflict.  *Id.*; *Kimber v. Thoikol Corp.*, 196 F.3d 1092, 1097 (10th Cir. 1999).

Defendants argue that the underlying decision to deny benefits should be reviewed under an arbitrary and capricious standard because the benefits decision in this case was made by a Plan fiduciary who, under the express terms of the Policies, was vested with discretionary authority with respect to claims for benefits.  Plaintiffs counter first that the language of the Policies is irrelevant because those Policies were not in effect at the time of Allie Louderback's death.  Plaintiffs also assert that, to the extent the Policies apply, the Policies vest only the Plan Administrator with discretionary authority and that, because it is undisputed that the Plan Administrator did not make the eligibility determination in this case, the court must review the decision de novo.  In addition, plaintiffs contend that a de novo standard of review is appropriate because defendant Gerber made the eligibility determination in this case and did so under a

conflict of interest.[3]

The court first addresses plaintiffs' overarching argument that the Policy language referenced by defendants is irrelevant because those Policies were not in effect at the time of Ms. Louderback's death.  Specifically, plaintiffs contend that the Policies were issued in August 2003–several months after the death of Ms. Louderback in January 2003.  It is undisputed, however, that the Policies expressly state that the Policies are effective as of January 1, 2003. The parties were permitted to agree that the effective date of the Policies should be one prior to the date that the Policies were actually executed or issued.  *See Mutual Life Ins. Co. of New York v. Hurni Packing Co.*, 263 U.S. 167, 175-76 (1923) ("It was competent for the parties to agree that the effective date of the policy should be one prior to its actual execution or issue; and this, in our opinion, is what they did."); *Brewer v. National Surety Corp*., 169 F.2d 926, 928 (10th Cir. 1948) ("It is competent for the parties to agree that a written contract shall take effect as of a date earlier than that on which it was executed.").  Plaintiffs do not contest that the parties to the Policies did not competently agree that the effective date of the Policies would antedate the execution or issuance of the Policies and do not challenge defendants' assertion that such practice is common in the insurance industry.  Rather, plaintiffs simply state in conclusory

_____

[3]While plaintiffs urge that a de novo standard applies when a plan administrator or fiduciary operates under a conflict of interest, Tenth Circuit case law clearly contradicts this argument.  Where a conflict exists, the arbitrary and capricious standard remains, but the district court undertakes a "sliding scale approach" where the court decreases the level of deference in proportion to the seriousness of the conflict.  *Flinders*, ___ F.3d at ___, 2007 WL 1894825, at *6.  Thus, even if the court were to find a conflict of interest, it would not apply a de novo standard as urged by plaintiffs.

fashion, based solely on the August 2003 "issuance" date stated in the Policies, that the Policies could not have been in effect in January 2003. The court, then, rejects plaintiffs' contention that the Policies were not in effect at the time of Ms. Louderback's death.

The court turns, then, to the specific language of the Policies. The Policies provide that "the Plan Administrator and other Plan fiduciaries shall have the discretionary authority to interpret the terms of the Plan and to determine eligibility for Plan benefits." The basis, then, for plaintiffs' contention that the Policies give discretionary authority only to the Plan Administrator is unclear, for the Policies expressly give such authority to "other Plan fiduciaries." Plaintiff urges that defendant Gerber made the eligibility determination. Without question, defendant Gerber, as the Plan insurer, constitutes a Plan fiduciary. *See Ruiz v. Continental Cas. Co.*, 400 F.3d 986, 990 (7th Cir. 2005) (plan insurer acts as plan fiduciary when making benefit determinations) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)); *Baker v. Metropolitan Life Ins. Co.*, 364 F.3d 624, 630 (5th Cir. 2004) ("MetLife, as an insurer, is a Plan fiduciary").[4] Because the Policies expressly reserve discretionary authority to fiduciaries, Gerber's decision is entitled to deferential review.[5]

---

[4] Indeed, plaintiffs do not argue that Gerber is not a plan fiduciary.

[5] With respect to the appeal process, the Policies state that the "party hearing the appeal has the discretionary authority to interpret the Plan and the Policy and to determine eligibility for benefits." Plaintiffs suggest that this language is inadequate because "a janitor would be entitled to an abuse of discretion review if he had heard" the plaintiffs' appeal. The fact remains that the appeal was heard by defendant Newman as the agent of defendant Gerber, a plan fiduciary. *See Garber v. Provident Life & Accident Ins. Co.*, 1999 WL 357812, at *2 (6th Cir. May 27, 1999) ("party hearing the appeal" language was a clear grant of discretionary authority requiring that the benefit decision be reviewed under the abuse of

The court turns, then, to plaintiffs' argument that Gerber acted under a conflict of interest because it was both the insurer as well as the entity making the benefits determination. *See Pitman v. Blue Cross & Blue Shield of Oklahoma*, 217 F.3d 1291, 1296 (10th Cir. 2000) (conflict existed where defendant was both the insurer and administrator of the plan). The uncontroverted evidence, however, demonstrates that Gerber delegated its decision-making authority to defendant A.C. Newman, an independent claims administrator.[6] By employing an independent third-party administrator, Gerber has avoided the potential conflicts highlighted by plaintiff, including an economic incentive to deny claims. *See Finley v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan*, 379 F.3d 1168, 1176 (10th Cir. 2004). Plaintiffs do not contend that A.C. Newman has a conflict of interest and the court discerns no conflict from the record. *See id.* ("[W]e will not find that an independent third-party administrator operates under a conflict of interest simply because it accepts a fee from the insurer for its services."). Finding no conflict of interest, A.C. Newman's decision on behalf of Gerber

---

discretion standard); *Rodolff v. Provident Life & Accident Ins. Co.*, 2002 WL 32072401, at *4 (S.D. Cal. Apr. 5, 2002) (applying abuse of discretion standard to review denial of claim despite fact that plan grants discretion to an unnamed party; plan is nevertheless unambiguous in its grant of discretionary authority to whomever administers the claims);

[6]In conclusory fashion, plaintiffs contend that A.C. Newman did not make the benefits determination in this case, directing the court to various correspondence from A.C. Newman referring to "Gerber Life's" decision concerning the claim for benefits. The language utilized by A.C. Newman, however, simply reflects the nature of the agency relationship between it and Gerber; it does not suggest (nor does any other evidence in the record) that A.C. Newman did not, in fact, make the eligibility determination in this case. *See Geddes v. United Staffing Alliance Employee Medical Plan*, 469 F.3d 919, 927 (10th Cir. 2006) (third-party claims administrator acts only as an agent of the fiduciary; "[f]or purposes of liability, decisions made by third parties are decisions made by the fiduciary").

is entitled to *Firestone* deference.  *See Geddes v. United Staffing Alliance Employee Medical Plan*, 469 F.3d 919, 927 (10th Cir. 2006) ("Decisions made by an independent, non-fiduciary third party at the behest of the fiduciary plan administrator are entitled to *Firestone* deference because the third parties act only as agents of the fiduciary.").

Applying the arbitrary and capricious standard, then, the benefits decision will be upheld so long as it is predicated on a reasoned basis.  *See Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006).  There is "no requirement that the basis relied upon be the only logical one or even the superlative one."  *Id.*  Thus, the court's "review inquires whether the administrator's decision resides 'somewhere on a continuum of reasonableness–even if on the low end.'"  *Id.* (quoting *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999)).  Moreover, because the court is applying the arbitrary and capricious standard of review, the court is not permitted to consider evidence outside the administrative record and thus, rejects plaintiffs' argument and, thus, grants defendants Litton and Northrop's motion in limine precluding plaintiffs from introducing evidence that was not part of the administrative record at the time the final benefits decision was made.  *See Geddes v. United Staffing Alliance Employee Medical Plan*, 469 F.3d 919, 928 (10th Cir. 2006) (reviewing court is permitted to consider extrinsic evidence only on a de novo review of a benefit claim; district court's review under arbitrary and capricious standard is limited to evidence from the closed administrative record); *Adamson*, 455 F.3d at 1214 (in applying arbitrary and capricious standard of review, court is limited to considering the evidence before the plan administrator at the time he made the decision to deny benefits).

### III.    Denial of Benefits Claim

In support of their benefit claim, plaintiffs assert that the benefit decision is arbitrary and capricious because it was made based on exclusionary language contained in Policies that were not issued until months after the loss occurred;[7] that the "Summary Plan Description" issued to Ms. Louderback in November 2002 was the only plan document in effect at the time of the loss and it does not exclude coverage for accidental deaths resulting from medical or surgical treatment; and that the language of the November 2002 Summary Plan Description trumps the conflicting language of the Policies or, stated another way, that the Policies constitute an impermissible retroactive amendment that denied plaintiffs accrued benefits in violation of ERISA § 204(g) (prohibiting plan amendments that eliminate or reduce accrued benefits).[8]  As will be explained, the court rejects these arguments, denies plaintiffs' motion for summary judgment on this claim and grants summary judgment in favor of defendants.

Plaintiffs' benefit claim is premised on a November 2002 document upon which Ms. Louderback purportedly relied in making her benefits election.  This document, however, was not submitted to the claims administrator at any time prior to the initial claims decision nor at any time prior to the final decision on appeal.  This court, then, cannot consider the document, *see Geddes*, 469 F.3d at 928 (district court's review under arbitrary and capricious standard is

---

[7]As explained previously, the court rejects plaintiffs' contention that the Policies were not in effect at the time of Ms. Louderback's death.

[8]It is doubtful whether this section supports plaintiffs' argument in any event.  *See Rombach v. Nestle USA, Inc*., 211 F.3d 190, 192-93 (2d Cir. 2000) (section 204(g) of ERISA does not apply to an employee welfare benefit plan) (citing 29 U.S.C. § 1051(1)).

limited to evidence from the closed administrative record), and plaintiffs' argument and evidence concerning the November 2002 document, developed after the administrative review process, does not render the administrator's decision arbitrary or capricious. *See Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380-81 (10th Cir. 1992) ("An administrator's decision is not arbitrary or capricious for failing to take into account evidence not before it.").

In any event, even assuming the court were to consider the November 2002 document, the court would conclude as a matter of law that the document is not a summary plan description. The document is entitled "NG Flexible Benefits Program Overview" and appears to constitute a series of PowerPoint slides reflecting bullet point "highlights" of the benefits program.[9] Significantly, the November 2002 document contains none of the information that ERISA and the implementing regulations require be contained in a summary plan description. *See* 29 U.S.C. § 1022(b); 29 C.F.R. § 2520.102-3.  Most importantly, the document does not contain any information concerning the circumstances which may disqualify a participant from securing benefits.  Indeed, the document covers accidental death and dismemberment insurance (the

---

[9]Part of the difficulty in ascertaining the exact nature of the document stems from plaintiffs' failure to authenticate the document as required by the applicable rules. See Fed. R. Civ. P. 56(e); D. Kan. R. 56.1. Plaintiffs suggest that they are excused from this requirement because the document was tendered by defendants as part of their Rule 26 disclosures such that the document has been "verified" by defendants.  Defendants, however, simply produced the document to plaintiffs and did not certify the document in any respect (they did, however, identify the document as a PowerPoint presentation).  Plaintiffs, then, were required to authenticate the document by a supporting affidavit or deposition.  For this reason alone, the court could strike the document from the record and refuse to consider it. Because defendants ultimately prevail in any event, the court will overlook plaintiffs' noncompliance with these rules.

policy at issue here) in just one page with 2 bullet points concerning basic and optional coverage amounts. The document, then, is so lacking in any detail that it cannot be deemed a summary plan description. *See Palmisano v. Allina Health Systems, Inc*., 190 F.3d 881, 888 (8th Cir. 1999) (loose-leaf compilation describing various benefits was "so lacking in detail" that it could not be deemed an SPD); *Hicks v. Fleming Cos*., 961 F.2d 537, 541 (5th Cir. 1992) (booklet summarizing various benefits did not constitute an SPD; appropriate test for determining whether a given document is an SPD is whether it "contains all or substantially all categories of information required under 29 U.S.C. § 1022(b) and the DOL's regulations at 29 C.F.R. § 2520.102-3 for the type of benefit in question."). Because the November 2002 document is not a summary plan description, the maxim that the summary plan description governs when it conflicts with the plan, *see Semtner v. Group Health Serv. of Okla., Inc*., 129 F.3d 1390, 1393 (10th Cir. 1997), is inapplicable here.

Aside from the November 2002 document, plaintiff directs the court to no policies or other plan documents under which the loss in this case would have been covered. It is undisputed that all policies in effect prior to the Policies issued in August 2003 contained the same exclusion concerning accidental death resulting from medical or surgical treatment. The summary plan description submitted by defendants (attached to the affidavit of Bob Kersey) also contains this exclusion. While plaintiffs contend that the summary plan description submitted by defendants did not apply to the plan that insured Ms. Louderback, plaintiff offers no evidence whatsoever of any other summary plan description or other plan documents that do not contain the exclusion clause under which plaintiffs' claim was denied. For this reason, plaintiffs'

argument that the Policies retroactively denied plaintiffs accrued benefits fails.

Beyond those arguments tied to the November 2002 document, plaintiffs make no arguments concerning the denial of benefits. For the foregoing reasons, then, the denial of benefits was not arbitrary or capricious.


## IV.    Civil Penalties Claim

Plaintiffs also assert a claim for civil penalties against all defendants for their purported violation of ERISA's document disclosure requirements. *See* ERISA § 502(c)(1). Section 502(c)(1) provides that a plan has 30 days to comply with the disclosure requirements of ERISA § 104, after which time a court may award statutory penalties of $100 per day for every day the plan fails to provide the requested information. Section 104, in turn, requires the plan administrator "upon written request of any participant or beneficiary," to provide a copy "of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." ERISA § 104(b)(4). According to plaintiffs, each defendant is liable for statutory penalties based on defendants' refusal to provide the November 2002 document that plaintiffs contend constitutes a summary plan description and the summary plan description attached to Mr. Kersey's affidavit.

Defendants Gerber and Newman move for summary judgment on this claim on the grounds that only Plan Administrators–which they undisputedly are not–can be liable for statutory penalties. Tenth Circuit precedent clearly supports defendants' argument. *See Wilcott*

*v. Matalack, Inc.*, 64 F.3d 1458, 1461 (10th Cir. 1995) (section 502(c) grants the district court discretion "to impose a penalty on any ERISA plan administrator"); *Averhart v. US West Management Pension Plan*, 46 F.3d 1480, 1489 (10th Cir. 1994) (individual could not be liable for civil penalties under ERISA because he was not the plan administrator and statutory liability for failing to provide requested information lies only with designated plan administrator); *McKinsey v. Sentry Ins.*, 986 F.2d 401, 403 (10th Cir. 1993) (entity that was not the plan administrator could not be held liable for civil penalties). In response to this argument, plaintiffs simply point to those cases holding that civil penalties can be based on information requests that are not directed to the plan administrator. Plaintiffs are correct that the Tenth Circuit, in appropriate circumstances, allows the imposition of penalties based on requests that are not directed to the plan administrator. *See Wilcott*, 64 F.3d at 1461-62. But in those cases, the actions of the individuals or entities in failing to provide the information requested are imputed to the plan administrator and liability is imposed only on the plan administrator. *See McKinsey*, 986 F.2d at 404-05 (plaintiff's suit against the plan administrator will not necessarily fail if requests were not directed to plan administrator; actions of other employees may be imputed to plan administrator and statutory liability for failing to provide requested information remains with designated plan administrator). Because defendants Gerber and Newman are not the plan administrators, summary judgment in favor of them is mandated on plaintiffs' claim for civil penalties.

Plaintiffs' claim against defendants Litton and Northrop also fails. Plaintiffs complain that defendants failed to disclose timely copies of the "various" summary plan descriptions and

primarily challenge defendants' failure to provide a copy of the November 2002 document until the Rule 26 disclosure process.  As explained above, however, there is no evidence suggesting that the November 2002 document is a summary plan description or any other Plan document. Rather, the uncontroverted evidence demonstrates that the November 2002 document constitutes a series of Power Point slides from a benefits presentation provided to employees.  Plaintiffs have not shown that defendants were required to provide this document under section 104(b)(4) and, thus, defendants are not liable under section 502(c) for failing to provide this document. *See Sage v. Automation, Inc. Pension Plan and Trust*, 845 F.2d 885, 894 n.4 (10th Cir. 1988) (to establish a violation of section 502(c), beneficiary must prove to district court that administrator was required by ERISA to provide the information) (citing *Kleinhans v. Lisle Sav. Profit Trust*, 810 F.2d 618, 622 (7th Cir. 1987)).

To the extent plaintiffs also complain about defendants' failure to provide a copy of the Summary Plan Description attached to Mr. Kinsey's affidavit, that claim fails because plaintiffs never requested in writing a copy of the Summary Plan Description.  *See* ERISA § 104(b)(4) (containing requirement that request be made in writing); *Boone v. Leavenworth Anesthesia, Inc*., 20 F.3d 1108, 1110 & n.3 (10th Cir. 1994) (written request is required to provide reliable evidence that a request for the information described in the statute has been made); *Michael v. First Commercial Bank*, 2003 WL 21580277, at *4 (7th Cir. July 7, 2003) (plan administrator did not violate section 104(b)(4) by failing to comply with oral request for plan documents).  The only written requests submitted to defendants in this case were made by plaintiffs' counsel.  An attorney "is entitled to request plan information on behalf of the participant if the request is clear

14

and puts the administrator on notice of the information sought." *Moothart v. Bell*, 21 F.3d 1499, 1503 (10th Cir. 1994).  The letters written by plaintiffs' counsel are very clear in their stated purpose–they request only the specific "actual policies of insurance in effect" at the time of Ms. Louderback's death as well as "actual signed contracts" dating back to the start of the decedent's employment.  Nowhere does plaintiffs' counsel specifically request a summary plan description or any other plan documents.  *See id.* at 1504 (letters from attorney constituted written requests under the statute where letters requested specific plan documents).  Although plaintiffs urge that these letters, when read as a whole, trigger a duty on the part of defendants to provide "all pertinent information," the court, mindful that statutory penalty provisions must be strictly construed, cannot agree.  *See Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990) (strictly construing section 502(c) and rejecting plaintiff's argument that he had made a written request for the summary plan description where nothing in the request or administrator's response indicates that plan administrator knew or should have known that plaintiff had requested a copy of that document).

For the foregoing reasons, summary judgment in favor of all defendants is warranted on plaintiffs' claim for statutory penalties under ERISA § 502(c).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Litton and Northrop's motion for summary judgment and motion in limine (doc. 48) is granted; defendants Gerber and Newman's motion for summary judgment (doc. 49) is granted; plaintiff's motion for summary judgment (doc. 57) is denied; and defendants Litton and Northrop's motion to strike

(doc. 62) is denied.

**IT IS SO ORDERED.**

Dated this 23rd day of August, 2007, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

16