## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Clara Louderback and**
**George Louderback,**

       **Plaintiffs,**

v.                                                                    **Case No. 06-2023-JWL**

**Litton Industries, Inc.;**
**Northrop Grumman Information**
**Technologies, Inc.; Gerber Life Insurance**
**Company; and A.C. Newman and Company**
**Insurance Correspondents, Inc.,**

       **Defendants.**

## MEMORANDUM AND ORDER

Plaintiffs filed this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., to recover accidental death benefits and to recover statutory penalties for violations of ERISA's document disclosure requirements. Previously, the parties filed cross-motions for summary judgment. In a memorandum and order dated August 23, 2007, the court granted defendants' motions for summary judgment and denied plaintiffs' motion for summary judgment.

This matter is now before the court on plaintiffs' motion for a new trial and/or reconsideration of the court's memorandum and order pursuant to Federal Rule of Civil Procedure 59(e) (doc. 83) and the court's analysis of plaintiffs' motion assumes familiarity with the court's August 23, 2007 memorandum and order. In their motion, plaintiffs contend that the court's memorandum and order is erroneous in two primary respects–for failing to consider the

Tenth Circuit's opinion in *Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan*, 38 F.3d 514 (10th Cir.1994), and for failing to assess statutory penalties against defendants Litton and Northrop for alleged disclosure violations.  As will be explained, the motion is denied.[1]

*The Tenth Circuit's* Bartlett *Opinion*

Plaintiffs contend that the court erroneously entered judgment against them without considering the "controlling precedent promulgated" in *Bartlett*.  Before turning to the merits of this argument, the court notes that plaintiffs did not direct the court's attention to the *Bartlett* decision until the filing of its August 2007 reply brief on its own motion for summary judgment. Indeed, the summary judgment briefing began in February 2007 and plaintiffs–despite the fact that they now contend that the holding in *Bartlett* "dictates the outcome of the present case"–did not mention the case in their opening brief in support of their own motion for summary judgment or at any time in response to defendants' motion for summary judgment.  In any event, the facts of *Bartlett* are different from the facts of this case and it does not control the outcome here.

In *Bartlett*, the Tenth Circuit considered whether a summary plan description redefining eligibility for life insurance benefits applied when the insured had elected coverage and had died before the summary had been distributed or made available to him.  Specifically, the insured was

---

[1]Plaintiffs also request oral argument on their motion.  Because the court, in its discretion, concludes that oral argument is unnecessary and would not aid the disposition of plaintiffs' motion, the court denies the request. *See* D. Kan. R. 7.2.

employed by the defendant as a regular full-time employee when the defendant decided to change its benefits plan for employees to a cafeteria plan. 38 F.3d at 516.  In the fall of 1990, as part of the change in the benefits plan, a presentation was given to employees, which described the flexible benefits program. *Id*. Employees were asked to make an individual election of benefits under the new plan.  *Id*.  At that time, there was no summary plan description describing the qualifications on the benefits.  *Id*.  The employer merely provided the employees with a flex benefits workbook.  *Id.*  The workbook stated that "all regular full-time employees" were eligible to participate in the program.  *Id*.  In November 1990, the insured elected coverage under Option A, which provided $150,000.00 in life insurance benefits.  *Id*.

Shortly after making his election, the insured became ill and he died in January 1991. The plaintiff made a demand on the life insurance policy for $150,000.00.  *Id*.  The plan administrator denied the claim on the grounds that the summary plan description for the flexible benefits program–which was not printed until two months after the insured's death– limited eligibility for the program to "regular full-time active employees" and the insured was not an "active" employee when the plan when into effect or at any time thereafter.  *Id*.  As noted, the workbook did not include "active" in defining eligibility for the plan.  *Id*.

The district court ultimately awarded the plaintiff $150,000.00 in life insurance proceeds on the grounds that the workbook constituted the benefit plan and the insured satisfied the plan's eligibility requirements.  *Id.* at 517-518.  The Tenth Circuit agreed with the district court's analysis, highlighting that the facts indicated that the workbook was the only documentation available to employees at the time they made their elections.  *Id*. at 518.  The Circuit further

indicated that the district court properly disregarded the language of the summary plan description because it was not printed or made available to employees until after the loss and the insured, through his beneficiary, could not be bound to terms of the policy of which he had no notice. *Id.* at 517. As explained by the Circuit, "[s]ubsequent modifications to the plan, through the drafting of the summary plan description, do not effect [sic] the terms of the written plan in existence when the plaintiff's claim arose." *Id.*

Plaintiffs assert that the facts of this case mirror the facts of *Bartlett*. According to plaintiffs, the November 2002 Power Point Presentation constitutes the benefit plan because it was the only document in existence at the time Allie Louderback made her elections. This misstates the record, which is materially different from that in *Bartlett*. As averred by Bob Kersey, defendant Northrop's Manager of Benefit Plan Contracting, the summary plan description that was updated on May 1, 2000 remained in effect as of January 1, 2003. *See* Exh. 1 to Defendants Northrop and Grumman's Memorandum in Support of their Motion for Summary Judgment (doc. 52). Plaintiffs have no evidence that this SPD was not in effect at the time Allie Louderback made her elections and at the time of her death. Thus, plaintiffs' argument that there was no plan in effect at the time of the loss other than the Power Point Presentation and that the exclusions in the August 2003 Policies could not retroactively apply to Allie Louderback is unavailing. In fact, the exclusions in the August 2003 Policies are a reiteration of the exclusions in the May 2000 summary plan description, which was in existence at the time plaintiffs' claim arose. *See McKenzie v. Advance Stores Co.*, 488 F. Supp. 658, 668-70 (S.D. Ohio 2007) (distinguishing *Bartlett* where prior SPD remained in effect despite change

in insurers).[2]

Plaintiffs contend, however, that the terms of the SPD do not control because there is no

evidence that defendants ever provided to her a copy of the summary plan description as required

by ERISA at any time prior to her death. While it is true that ERISA requires plan

administrators to provide plan participants with a copy of the applicable summary plan

description, an administrator's failure to comply with this disclosure requirement cannot be the

basis for an award of benefits when no benefits are due under the terms of the plan. *See*

*Alexander v. Anheuser-Busch Cos., Inc.*, 990 F.2d 536 (10th Cir. 1993) (plaintiff would not

prevail on claim for plan benefits based on disclosure violations because no benefits were due

---

[2]In its August 2007 memorandum and order, the court concluded that Gerber's decision to deny benefits was subject to review under the arbitrary and capricious standard based on the requisite discretionary language in the Policies. In reaching this conclusion, the court rejected plaintiffs' argument that the discretionary language of the Policies did not control because the Policies were not in effect at the time of the loss and, in doing so, relied on cases recognizing the right of parties to agree that the effective date of an insurance policy should be one prior to its actual execution or issue. *See Mutual Life Ins. Co. of New York v. Hurni Packing Co.*, 263 U.S. 167, 175-76 (1923) ("It was competent for the parties to agree that the effective date of the policy should be one prior to its actual execution or issue; and this, in our opinion, is what they did."); *Brewer v. National Surety Corp.*, 169 F.2d 926, 928 (10th Cir. 1948) ("It is competent for the parties to agree that a written contract shall take effect as of a date earlier than that on which it was executed."). In their motion, plaintiffs contend that the cases relied upon by the court do not extend to the ERISA context and that *Bartlett* informs that discretionary language in a document not yet published should be disregarded. In fact, the court should have looked to the language of the plan documents in existence at the time of the loss to determine whether discretionary authority was reserved to the plan administrator. *See Bartlett*, 38 F.3d at 517. Because the May 2000 summary plan description that was in effect and in existence at the time of the loss also vests discretionary authority in the plan administrator, the court's ultimate decision to utilize the arbitrary and capricious standard was correct.

5

under the terms of his plan and ERISA provided specific remedy for disclosure violations); *accord Lewandowski v. Occidental Chem. Corp.*, 986 F.2d 1006, 1009-10 (6th Cir. 1993) (Nothing in ERISA's civil enforcement provisions "suggests that a plan beneficiary should receive a benefit award based on a plan administrator's failure to disclose required information."). Thus, the fact that the record does not disclose whether the SPD was ever provided to Allie Louderback does not bear on plaintiffs' claim for benefits because any failure to disclose the SPD does not entitle plaintiffs to a substantive remedy.

The only issue, then, is whether the exclusionary language in the SPD excludes coverage in this case. In pertinent part, the SPD states that basic and optional AD&D do not cover:

- Losses that occur more than 365 days after an accident

- Losses that result from suicide, attempted suicide, bodily infirmity, or disease

- Losses that result from an infection other than an accidental cut or wound that becomes infected

- Medical or surgical treatment, except surgical treatment required by the accident

According to plaintiffs, the fourth exclusion only gives notice that medical or surgical treatment is excluded and is silent as to death resulting from medical or surgical treatment. In other words, unlike the first three exclusions, the term "losses" does not precede the exclusion such that losses resulting from medical or surgical treatment have not been excluded and, in any event, any ambiguity must be resolved in favor of plaintiffs. Plaintiffs' argument ignores that the benefits decision in this case was based not only on the "medical or surgical treatment" exclusion but also

on the exclusion concerning infections.  Thus, even assuming plaintiffs were correct that the

medical or surgical treatment exclusion does not exclude coverage in this case, plaintiffs have

not suggested that the claim was not appropriately denied pursuant to the exclusion concerning

losses resulting from an infection.

For the foregoing reasons, the *Bartlett* decision does not entitle plaintiffs to a new trial

and does not affect the court's ultimate disposition of the case.

*Statutory Penalties Claim*

With respect to their claim for statutory penalties, plaintiffs asserted in their complaint

that defendants failed to respond to plaintiffs' request for documents in violation of 29 U.S.C.

§ 1024(b)(4) and that penalties were thus warranted under section 1132(c).  In the pretrial order,

plaintiffs did not expressly reference section 1024(b)(4) or any other statutory section, but

continued to allege, consistent with their complaint, that defendants had failed to respond to

plaintiffs' requests for documents.  Quite reasonably, defendants, in their motion for summary

judgment, construed the claim as one alleging a violation of section 1024(b)(4) and argued that

summary judgment was appropriate because plaintiffs had not made a written request for

documents as required by section 1024(b)(4).  In response to defendants' motion, plaintiffs urged

that various letters from plaintiffs and their counsel questioning the validity of certain policies

were sufficient, when taken as a whole, to satisfy the writing requirement and to trigger

defendants' duty to provide documents.  Plaintiffs asserted no other theory of recovery and did

not contend that their claim for statutory penalties was based on anything other than section

1024(b)(4).  Defendants reiterated the written request requirement in their reply brief and the court granted summary judgment on this issue in favor of defendants.[3]

In their own motion for summary judgment, plaintiffs also phrased their claim in terms of requests made by plaintiffs and contended that penalties were appropriate because defendants "never provided applicable [documents] when asked."  In response, defendants again asserted that no written request was made as required to trigger a duty under section 1024(b)(4).  For the first time in their reply brief on their own motion, plaintiffs maintained that their claim for penalties was based not on section 1024(b)(4) but rather on section 1024(b)(1).  That section requires plan administrators to provide certain plan documents to a plan participant within 90 days after he or she becomes a participant and to a beneficiary receiving benefits under the plan within 90 days after he first receives benefits.  *See* 29 U.S.C. § 1024(b)(1).  That section does not contain a written request requirement and some courts have held that a violation of section 1024(b)(1) is sufficient to trigger statutory penalties under section 1132(c) even in the absence of a written request.  *See, e.g.*, *Crotty v. Cook*, 121 F.3d 541, 547-48 (9th Cir. 1997) (civil enforcement penalty provision applies without regard to whether request was in writing if participant requests something he was entitled to receive without any request).

In their motion for reconsideration, plaintiffs urge the court to conclude that their oral requests for documents to which they were automatically entitled are sufficient to trigger

---

[3]The court also granted summary judgment in favor of defendants Gerber and Newman on the grounds that only Plan Administrators can be liable for statutory penalties and defendants Gerber and Newman undisputedly are not the plan administrators.  Plaintiffs do not challenge this portion of the court's order.

penalties.  The court denies the motion.  Plaintiffs' complaint–asserting only a violation of section 1024(b)(4)–was filed in January 2006.  The summary judgment briefing began and the pretrial order was entered in February 2007.  Throughout this time, plaintiffs never asserted a statutory penalties claim based on a violation of section 1024(b)(1) and they did not assert such a claim in response to defendants' motion for summary judgment.  Indeed, the claim was made only in connection with plaintiffs' August 2007 reply brief to their own motion for summary judgment.  At worst, the court would deem plaintiffs' claim abandoned because they failed to raise it at any time in connection with defendants' motion for summary judgment.  *See Hinsdale v. City of Liberal, Kansas*, 2001 WL 980781, at *16-17 (10th Cir. 2001) (affirming district court's conclusion that plaintiff had abandoned certain claims by failing to address those claims in response to the defendant's motion for summary judgment and concluding that the plaintiff's failure to respond was "fatal" to his claims) (citing *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992)).  At best, the court would construe plaintiffs' reply brief as a motion to amend their complaint, *see Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003), and would deny that motion on the grounds of undue delay.  *See Smith v. Aztec Well Serv. Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006) ("[I]f there has been undue delay on the part of the plaintiff in raising the claim, the district court may properly deny the motion as untimely.").  When determining whether a newly raised claim is untimely under Rule 15(a), the Tenth Circuit "focuses primarily on the reasons for the delay."  *See id.*  According to the Circuit, "denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'"  *Id*. (quotations and citations omitted).  Plaintiffs offer no explanation for their 19-

month delay in raising the claim, measured from the time they filed their complaint to the time they filed their reply brief in support of their motion for summary judgment. Plaintiffs' motion for reconsideration of the court's memorandum and order concerning their claim for statutory penalties is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion for new trial and/or reconsideration pursuant to Rule 59(e) (doc. 83) is denied and plaintiffs' motion for oral argument (doc. 91) is denied.

**IT IS SO ORDERED.**

Dated this 13TH day of November, 2007, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge